KING
*v.*
RIDDLE.

---

## DAVY'S EXECUTORS *v.* FAW.

1812.

March 3d.

THIS case seems to be sufficiently stated in the following opinion, delivered by MARSHALL, *Ch. J.* on the 9th of March....All the Judges being present.

This is an appeal from a decree of the Circuit Court for the county of Alexandria, sitting in Chancery, by which that Court set aside an award made between the parties, and directed an account.

An award will not be set aside in equity on account of an omission by the arbitrators to act upon part of the matters submitted, unless that omission

shall have in-
jured the com
plainant.
When the
price of land,
and not the
question of ti-
tle, is submit-
ted, the sub-
mission and a-
ward need not
be by deed.

The bill impeaches the award, because,

1. The arbiters exceeded their power.

2. They made no award with respect to a part of the matter submitted to them.

3. They were partial, and proceeded to make their award without hearing the party against whom it was made.

The arbitration bond binds the parties to submit to the award, order a arbitrament of Francis Peyton, Theophilus Harris and Thomas Herbert, or any two of them, respecting a controversy of *several accounts and contracts existing* between them.

A judgment at law has been obtained for the amount of the award ; for relief against which and against the award itself this suit was instituted.

By the Plaintiffs in error it is contended, that excess of power in arbiters is a defence at law, and is therefore not examinable in this Court.

That the injured party may avail himself of this defence in a Court of law, where the excess of power is apparent on the face of the award, is not controverted. But, in this case, it is not shown by the award itself, and the Defendant insists that he was not at liberty, in a Court of law, to avail himself of evidence dehors the award ; and in support of this opinion the case of Wills v. Maccarmick, 2 Wilson, 149, has been much relied upon. Without deciding that question, the Court will proceed to inquire whether the Defendant in error has succeeded in proving that, in this case, the arbiters have, in fact, exceeded their power.

It appears that Abraham Faw sold to David Davy a lot of ground, the purchase money for which was payable in four years, in four equal annual payments. Davy conveyed to Faw, about the same time, a lot which he had purchased from Elisha C. Dick, and which he held on the condition of making certain improvements. Davy becoming insolvent, it was agreed that his con-

tract with Faw should be annulled, that the bonds he had given Faw for the purchase of the lot should be returned to him, and that he should surrender the bond for a title which Faw had executed. It had been stipulated that, in the event of his failing to pay the purchase money, and of the contract being avoided, the money actually paid by Davy to Faw should be considered as rent so far as rent was allowed. There had been some other dealings between the parties, and there had been a small piece of ground rented to Davy, on which he had put some inconsiderable improvements.

In this state of things they agreed to submit their affairs to arbitration, and the bond was executed which has been stated. The arbiters awarded that Faw should pay Davy *l* 314 4 11, and it is proved that, in making up the account between the parties, they debited Faw with *l* 300 for the lot which had been conveyed to him by Davy. Faw contends that this was not a *contract subsisting* between the parties, and consequently is not included within the terms of the submission.

Faw alleges in his bill that this whole transaction was closed: that the lot conveyed to him by Davy formed no part of the consideration given for the lot he had sold, but was conveyed to him, because Davy considered the rent reserved on that lot and the conditions of improvement, which were inserted in the deed, as equivalent to its full value. These allegations are denied in the answer; and the Defendant avers that the price of the lot purchased by him was *l* 500; that he conveyed the lot he had purchased from Dick at *l* 100, and gave his bonds for *l* 400, the residue of the purchase money; that, when this contract was annulled, he became entitled to his lot or to its value, and that this was one of the subjects submitted to the referees.

In addition to this testimony furnished by the answer, the Defendant has produced the testimony of a witness who was present when the arbitration was agreed upon and the bond executed. He says that the lot purchased by the Defendant from the Plaintiff, and that which had been conveyed by the Defendant to the Plaintiff as well as other accounts between the parties formed the subjects of conversation.

Francis Peyton, one of the arbiters, declares that he considered all the transactions between Faw and Davy as submitted to them; that Faw himself laid before them the bond he had given to Davy for a conveyance of the lot he had sold, and that he always understood from Mr. Faw during the arbitration that he was willing to pay $l$100 for the lot conveyed to him by Davy. Peyton adds that the mode adopted by the arbiters for arranging that part of the subject, was understood by them to be the one which was most agreeable to Mr. Faw.

The Court is of opinion that the Plaintiff in the Court below has failed in showing that the arbiters have exceeded their powers.

2. A second objection to this award is, that the arbiters have not settled the accounts between the parties for flour stored by Faw for Davy, which accounts were clearly within the submission.

The Defendant has not shown that he is injured by this omission, and it is, therefore, unnecessary to decide whether, had he been injured, a Court of equity could or could not have afforded relief.

3. A third ground, on which the application for relief is placed, is the partiality and improper conduct of the arbiters.

That judges chosen by the parties themselves as well as those who are constituted by law, ought to be exempt from all imputation of partiality or corruption; that their conduct ought to be fair, and their proceedings regular, so as to give the parties an opportunity to be heard, and themselves the means of understanding the subjects they are to decide, are propositions not to be controverted. But corrupt motives are not lightly to be ascribed to the arbiter, nor is partiality to be attributed to him on account of difference of opinion with respect to the decision he has made.

The charge made in this case, that the parties were not sufficiently heard, is not supported, and is contradicted by the testimony in the cause. The general

charge of partiality is also contradicted and is express-
ly denied by the arbiters, who have been made Defend-
ants, and by the deposition of Francis Peyton who did
not sign the award.

Some particular facts have been proved, by which
this charge, it is supposed by the counsel for the De-
fendant in error, may be supported.

M'Kinsey Talbot deposes that, after the arbiters had
separated, Thomas Herbert, who was one of them, said
that David Davy ought to buy his winter's meat for
him without making any charge on account of the par-
ticular service he had rendered him in the said arbitra-
tion.

That such language is unbecoming in a judge will
not be denied; and if the circumstances leading to these
expressions, and the manner in which they were utter-
ed, had been stated in the record, and there had been
reason to believe that the words were spoken seriously,
they would have furnished objections to the award not
easily to be removed. But nothing is stated which
could give these expressions a serious aspect. They
appear not to have been delivered confidentially; and
as it is difficult to conceive that a man, who could be
chosen as an arbiter, would thus wantonly and unneces-
sarily expose the depravity of his own conduct, the
Court must consider these words as spoken in sport,
with indiscreet levity, but not as seriously indicative of
of an opinion that he had made an unjust award.

The same witness, in another deposition, states that
he was present at a meeting of the arbiters, and heard
Thomas Herbert say that they had the hands of Abra-
ham Faw so fast tied that he could not, for his life, get
them loose.

It is impossible to consider these expressions in an
arbiter without some disapprobation. But what led to
the employment of them does not appear; nor is the
Court informed of the temper in which they were em-
ployed. It is worthy of remark that Thomas Herbert
does not appear to have had an opportunity of cross
examining this witness, and that this deposition was

DAVY's
EX'RS.
*v.*
FAW.

taken before the arbiters were made parties to the cause.

There is some testimony respecting some altercations or jealousies between Faw and some of the arbiters at a corporation election, but they were too trivial to be worthy of notice; and as they occurred about the time of the submission, and before the arbiters proceeded on the business, it is supposed that they would have induced Faw, had he thought them of any importance, to make some effort to prevent an award.

Upon a view of the whole case, the Court is of opinion that the Plaintiff in the Court below has not shown sufficient matter to set aside the judgment at law, and doth therefore direct that the decree of the Circuit Court be reversed and annulled.

March 13th—After the decision of the cause, C. Lee for the Defendant in error, cited *Kyd on Awards*, to show that where the dispute is about land the submission and award must be by *deed*.

MARSHALL, *Ch. J.*—That is where the *title* is in question. But here the title was conveyed—the dispute was only as to the *price*. The question of title was not submitted.

LIVINGSTON, *J.*—Although that point was not made in the argument, yet it was considered by the Court.